UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                :

ALEKSANDRA NESTEROVA,          :   **Case No.: 1:25 cv-04478-PK-**

                                :

             Plaintiff,           :

                                :     **FIRST-AMENDED**
                                :      **COMPLAINT**
          – against –         :        **AND**
                                :    **JURY DEMAND**

TROMBERG, MORRIS AND PARTNERS, PLLC,  :
and CAVALRY SPV I, LLC, and CAVALRY  :
PORTFOLIO SERVICES, LLC,         :
              Defendants.        :
                                X
--------------------------------------------------------------------

## PRELIMINARY STATEMENT

Plaintiff Aleksandra Nesterova ("Nesterova" or "Ms. Nesterova") files suit against Defendants Tromberg, Morris & Partners, PLLC ("Tromberg"), and Cavalry SPV I, LLC ("Cavalry"), and Cavalry Portfolio Services, LLC, for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. sec.* (the "FDCPA") and committing gross negligence and conversion, alleges as follows:

## SUMMARY OF CLAIMS[1]

Ms. Nesterova is a single mother and social worker who supports her family with her earnings and food stamps. Every dollar she receives is essential to her household's well-being. Nevertheless, when she was sued on a credit card in 2018, she attempted to negotiate a payment plan as soon as she received notice of the lawsuit, and entered into a settlement agreement in July 2019. She made payments on the settlement agreement initially, but fell behind due to her financial circumstances and the need to provide for her family. After Ms. Nesterova defaulted on

---

[1] This summary is for the convenience of Defendants and the Court. The summary is not intended to limit the basis of Plaintiff's claims as the full factual basis for the claims are laid out in far greater detail in the statement of facts.

Last saved: 2/2/2026 1:47 PM

the settlement, Defendants were slow to act—seeking a default judgment on the settlement in January 2020, but only entering said judgment two years later, in February 2022. Defendants waited another two years and ten months before finally moving to collect on the judgment in December 2024, levying the entirety of Ms. Nesterova's bank account. 90% of the funds restrained were exempt from levy and garnishment, as the only sources of funds in Ms. Nesterova's account were earnings paid for personal services rendered within 60 days preceding or at any point after the income execution is delivered to the sheriff. 90% of such earnings are exempt from collection pursuant to CPLR 5205(d)(2). Ms. Nesterova timely sent an Exemption Claim Form with evidence of the funds' exempt status to Defendants, which was received on January 13, 2025 and ignored by Defendants.

Despite the exempt status of Ms. Nesterova's funds, and Ms. Nesterova's repeated notification of Defendants as to the exempt status of the restrained funds, Defendants continued to restrain Ms. Nesterova's bank account containing exempt funds for seven months, refusing to return the full amount of the restrained exempt funds even after a court ordered them to do so in May 2025. Defendants continue to hold Ms. Nesterova's exempt funds despite this court order.

## THE PARTIES

1.      Plaintiff Aleksandra Nesterova is an individual who resides in Kings County, New York.

2.      Ms. Nesterova is a consumer as defined by 15 U.S.C. § 1692a(3) because she was alleged to owe a debt to Cavalry SPV I, LLC, arising from a credit card.  Plaintiff's alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5) because it was incurred primarily for family, personal, or household purposes. The "debt" includes the amount in the lawsuit and the resulting judgment.

Last saved: 2/2/2026 1:47 PM

3.     Defendant Tromberg, Morris & Partners, PLLC, ("Tromberg") is a debt collection law firm organized under the laws of the State of New York which files thousands of collection actions in New York courts. Tromberg engages in business in New York State and this suit arises out of Tromberg's business in New York State. Tromberg's principal place of business is in New York, NY 10006.

4.     Tromberg is a debt collector as defined in 15 U.S.C. § 1692a(6) as they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be due another, and that is their principal purpose. Specifically, Tromberg files thousands of collections lawsuits in civil court and seeks to enforce thousands of putative debts.

1.     Defendant Cavalry SPV I, LLC ("SPV") is a debt buyer organized under the laws of the State of Connecticut which buys and collects on defaulted consumer debts. Cavalry's principal (indeed sole) purpose is the purchase of putative consumer debts. Cavalry then collects on those purchased debts by using law firms like Tromberg to collect on those judgments by issuing thousands of information subpoenas, bank restraints, and garnishments, and sending thousands of collection letters. Cavalry holds a Debt Collection Agency license from the New York City Department of Consumer and Worker Protection with the license number 1327348-DCA. Cavalry is a debt collector as defined under the FDCPA.

5.

6.   Defendant Cavalry Portfolio Services, LLC, ("CPS") is a servicer which manages and oversees the debt collection activities of the various Cavalry entities, including Cavalry SPV I, LLC. CPS acts as servicer for hundreds of thousands of consumer credit accounts SPV and other related Cavalry debt buyers. While SPV is the alleged owner of the putative debt (here the debt

3

sought to be collected against Ms. Nesterova, and the resulting judgment), CPS takes the active steps on behalf of SPV in collection of the putative debt. For example, CPS is the entity that, as the agent of SPV retains and the debt collection law firms, here Tromberg, and who communicates with the collection law firm. Indeed, the collection firms typically consider CPS the actual client. CPS controls and oversees the actions of the collection firms, who must comply with the CPS policy manuals. *See In re LeGrand*, 638 B.R. 151, 154 (Bkrtcy.E.D.Cal., 2022) (describing relationship between CPS and SPV.[2]) ("Nationwide servicer Cavalry Portfolio Services, LLC, ("Cavalry"), performs account recovery and record-maintenance services for Cavalry SPV I, LLC ("Cavalry SPV"), which is in the business of purchasing defaulted accounts receivable. Money recovered by the law firm (here the money collected from Ms. Nesterova) is paid to CPS.

7.  For these reasons and others SPV is jointly and severally liable for the acts CPS takes on its behalf. For these reasons and others, when this First Amended Complaint, SPV and CPS are

---

[2]  From the Opinion:

At a pandemic-delayed hearing, the servicer demonstrated it had created and enforced an effective program to supervise local counsel...

Nationwide servicer Cavalry Portfolio Services, LLC, ("Cavalry"), performs account recovery and record-maintenance services for Cavalry SPV I, LLC ("Cavalry SPV"), which is in the business of purchasing defaulted accounts receivable. Winn Law Group ("WLG" or "Winn Law") is a collection law firm retained by Cavalry. ...

The testimony of the Cavalry Vice-President of Legal Operations and of the Chief Compliance Officer, which this court believed, described the Cavalry business structure, procedures, and compliance measures. When Cavalry SPV acquires accounts, it assigns them to Cavalry for servicing and recovery. Servicing and recovery by Cavalry entails, among other things, retaining law firms for collection activity and filing claims in bankruptcy cases.

Retained counsel, including Winn Law, are engaged pursuant to terms of the Cavalry Legal Services Agreement ("LSA"). The LSA requires retained law firms to adhere to standards set forth in the Cavalry Legal Network Handbook ("LNH"). Cavalry has a Compliance Monitoring Program designed to provide continuous review of business processes of service providers and of retained law firms for adherence to Cavalry polices and applicable federal, state, and local law.

The Cavalry Compliance Department reviews and analyzes all customer service and regulatory complaints to identify potential issues. It also regularly audits performance and compliance by retained law firms... The Cavalry LNH requires retained law firms daily to log and report complaints related to Cavalry accounts.

4

referred to jointly as "Cavalry," unless otherwise indicated.

8.   The principalle (indeed sole) purpose of CPS is to take active steps to collect up hundreds of thoughts of defaulted consumer debts for SPV and other related Cavalry debt purchasers, and it does so regularly. For these reasons and others, CPS is a debt collector as defined by the FDPCA.

9.   Tromberg was the freely chosen counsel of the Cavalry.  Tromberg was acting in the course and scope of its agency for Cavalry.  For these reasons and others Cavalry is jointly and severally liable for the acts of Tromberg taken on behalf of Cavalry.

2.

## STATEMENT OF FACTS

### *The Initial Complaint*

1.10.      On November 23, 2018, Tromberg (then Stephen Einstein and Associates) filed suit against Ms. Nesterova in Kings County Civil Court. Exhibit A (case summary).

2.11.      On March 14, 2019, a default judgment was entered against Ms. Nesterova. Exhibit A.

3.12.      Ms. Nesterova finally became aware of the lawsuit after notice of the default judgment was mailed to her, at which time she began to participate in her own defense pro se. Exhibit A.

4.13.      Ms. Nesterova filed an Order to Show Cause on June 27, 2019, and was granted a hearing on July 11, 2019. Exhibit A.

5.14.      Ms. Nesterova attended the July 11 hearing, at which an attorney for Defendants pressured her into a settlement agreement she did not feel she could afford, convincing her she would face a worse outcome if she continued to fight the lawsuit.

5

Last saved: 2/2/2026 1:47 PM

6.15.    Feeling that she had no choice, Ms. Nesterova entered into a settlement agreement vacating the default judgment and requiring monthly payments of $75 on July 11, 2019. Exhibit B (July 11, 2019 so-ordered stipulation of settlement).

*Default and Delay*

7.16.    Ms. Nesterova made monthly payments of $75 in August and October of 2019 before finally defaulting on the stipulation of settlement.

8.17.    After her default, Ms. Nesterova did not receive the 10-day notice to cure required by the settlement. Ms. Nesterova additionally attempted to contact Defendant Tromberg to negotiate a payment plan she could afford, but was unable to reach anyone at Tromberg. She continued to attempt to contact Defendant Tromberg to work out an arrangement to resume payments even after the pandemic greatly reduced her income as a social worker, but her phone calls and voicemails were never answered or returned.

9.18.    According to Tromberg's own records, Tromberg garnished $71.25 of Ms. Nesterova's pay on October 23, 2019, even though the earlier judgment had been vacated on July 11 and Tromberg had yet to pursue a default judgment on the stipulation of settlement. Exhibit C (Tromberg payment records).

10.19.    Defendants finally moved for a default judgment on the stipulation of settlement on January 22, 2020.

11.20.    Defendants succeeded in getting this default judgment entered against Ms. Nesterova on February 14, 2022.

12.21.    Despite obtaining a default judgment in February 2022, Defendants did not move to collect on the judgment for more than two years, waiting until December 2024.

*Tromberg Restrains Exempt Funds*

13.22.    After finally moving to enforce the default judgment in December 2024,

6

Defendants moved to collect, sending a Levy and Final Demand to the office of New York City Marshal Ronald Moses on December 10, 2024, and successfully restraining Ms. Nesterova's bank account beginning on December 18, 2024. Exhibit D (Levy and Final Demand), Exhibit E (January 2025 bank statement.)

14.23.    The funds restrained were exclusively earnings for services rendered within 60 days preceding the restraint. As such, 90% of the funds were exempt from restraint under New York law.

15.24.    Ms. Nesterova noticed the restraint when she logged into her mobile banking app on December 17, at which time she immediately called TD Bank to inquire for more information. As Ms. Nesterova was not notified of the default judgment on the stipulation of settlement, she initially suspected fraud.

16.25.    When she called TD Bank, a bank employee informed her that a levy had been placed on her account and instructed her to call the bank's levy department. Ms. Nesterova promptly did so.

17.26.    The bank's levy department informed Ms. Nesterova that they had received papers from the New York City Marshal for a judgment levy from Tromberg on her account, and told her she would have to discuss it with the marshal.

18.27.    The next morning, Ms. Nesterova went to the Kings County Civil Court desperately seeking help and information.

19.28.    Ms. Nesterova was distraught and in tears, afraid to think about how she would provide for her children.

20.29.    At the Kings County Civil Court, Ms. Nesterova was incorrectly told there was no default judgment against her. She persisted in calling TD Bank and Tromberg, but only TD Bank

Last saved: 2/2/2026 1:47 PM

answered.

21.30.    Eventually, after explaining the situation to a TD Bank employee, Ms. Nesterova was able to withdraw some funds that day: the standard statutorily exempt amount of $3,840, but not the remaining $1,677.63 in exempt funds from earnings for services rendered within the preceding 60 days. Exhibit E.

22.31.    The same day, Ms. Nesterova's next paycheck posted to her account and was immediately restrained; Ms. Nesterova was told there was nothing more she could do but fill out and submit an Exemption Claim Form.

23.32.    Ms. Nesterova sought legal assistance and eventually obtained the assistance of the New Economy Project, who assisted her in filling out the Exemption Claim Form and making detailed calculations as to the application of the exemption to each paycheck.

24.33.    Ms. Nesterova submitted this Exemption Claim Form to Tromberg and TD Bank on January 10, 2025, accompanied by an explanation and a detailed calculation of the status of the exemption with regards to each paycheck which contributed to the funds restrained. Exhibit F (January 10, 2025 Exemption Claim Form), Exhibit G (Exemption Claim Letter).

25.34.    Ms. Nesterova received confirmation of Tromberg's receipt of her exemption claim form on January 13, 2025.

26.35.    Ms. Nesterova filed an Order to Show Cause with the assistance of CLARO on January 16, 2025. This Order to Show Cause was rejected by a judge for paperwork deficiencies. Exhibit H (January 16, 2025 Order to Show Cause).

27.36.    Ms. Nesterova filed a second Order to Show Cause, correcting the error of the first one, the next day, January 17, 2025. Exhibit I (January 17, 2025 Order to Show Cause).

28.37.    Ms. Nesterova continued attempting to notify Defendants of the exempt status of

8

the restrained funds, contacting Tromberg through their website on January 28, 2025 in an attempt to communicate the situation and the exempt status of the restrained funds to someone at Tromberg.

~~29.~~38.    Tromberg transferred the restrained funds to Cavalry no later than Feburary 5, 2025, crediting $3,166.77 to Ms. Nesterova's judgment balance on that date, according to Tromberg's own records. Exhibit C.

### *Tromberg Doubles Down and Opposes the Order to Show Cause*

~~30.~~39.    Despite Ms. Nesterova's efforts to inform Defendants that the restrained funds were exempt and should be returned, Defendants persisted in pursuing the restraint and levy.

~~31.~~40.    Defendants ignored Ms. Nesterova's Exemption Claim Form after their receipt thereof on January 13, 2025. Defendants ignored Ms. Nesterova's two January Orders to Show Cause. And Defendants ignored Ms. Nesterova's posting on Tromberg's website on January 28, 2025.

~~32.~~41.    However, Defendants had not forgotten about Ms. Nesterova; they took more than $3,000 from her bank account in December and credited the amounts obtained to her judgment balance in February, ignoring her repeated attempts to demonstrate that those funds were mostly exempt. Exhibit C.

~~33.~~42.    Ms. Nesterova filed a third Order to Show Cause for Defendants' failure to answer her previous Orders to Show Cause on March 19, 2025. Exhibit J (Affirmation and exhibits in support of March 19, 2025 OSC.)

~~34.~~43.    Defendants finally proceeded to file their opposition to Ms. Nesterova's Order to Show Cause on March 28, 2025. At no point in the four-page document or its supporting exhibits did Defendants respond to Ms. Nesterova's claim that the funds were exempt. Exhibit K (Tromberg opposition).

**Formatted:** Indent: Left:  0", First line:  0.31", Numbered + Level: 1 + Numbering Style: 1, 2, 3, ... + Start at: 1 + Alignment: Left + Aligned at:  0.25" + Indent at:  0.5"

Last saved: 2/2/2026 1:47 PM

35.44.    Ms. Nesterova persisted. After a court date on her Order to Show Cause was adjourned from April 2 to May 8, Ms. Nesterova wrote a letter directly to the New York City Marshal on May 5, substantially repeating what she had already told Defendants through the Exemption Claim Form and her other communications with Tromberg. She sent a similar letter to Tromberg on the same date. Exhibit L (May 5, 2025 letters).

36.45.    At a second court date on May 8, a legal services attorney represented Ms. Nesterova for the purposes of negotiation only. Attempts to negotiate a settlement or the return of Ms. Nesterova's exempt funds were unsuccessful. Exhibit M (May 8, 2025 notice of appearance).

37.46.    On May 15, 2025, a Kings County Civil Court Judge issued an order denying Ms. Nesterova's motion to vacate the judgment but granting her request for an order for the return of the exempt funds within 20 days. Exhibit N (May 15, 2025 court order).

38.47.    The 20-day deadline for the return of Ms. Nesterova's funds came and went in early June. To this day, Defendants have not returned Ms. Nesterova's $1,677.63 in exempt funds, despite the court order.

*The Collection Lawsuit Caused Ms. Nesterova Significant Stress, Forced Her to Incur Travel Expenses, and Inflicted Significant Emotional Distress Damages*

39.48.    Upon seeing her money taken, Ms. Nesterova was shocked, upset, and afraid.

40.49.    Ms. Nesterova is the sole provider for herself and her children. The prospect of a large money judgment against her caused a significant deal of stress.

41.50.    Ms. Nesterova suffers from Graves' disease, also known as hyperthyroidism, which is exacerbated by stress.

42.51.    When Ms. Nesterova found out about the restraint on December 17, a week before Christmas, she collapsed onto the floor and broke down crying in front of her young

10

children. She told them she did not know what they were going to do for Christmas because she no longer had any money. She contacted numerous friends and relatives in a panic and immediately worried about what she would do with her children over their winter break from school.

43.52.    Ms. Nesterova took off from work and frantically traveled across Brooklyn on December 18, from her home in southern Brooklyn to Kings County Civil Court in downtown Brooklyn to her local TD Bank branch, in search of information and assistance. Ms. Nesterova was highly and visibly distressed throughout this ordeal.

44.53.    Defendants have held Ms. Nesterova's exempt funds for over seven months, depriving her of money needed to meet the basic needs of herself and her two children.

45.54.    Defendants' refusal to return the exempt funds has forced Ms. Nesterova to incur additional travel and postage expenses, attend multiple court appearances, and devote significant additional time to attempting to secure the return of her exempt funds.

46.55.    As Defendants *continue* to fail to return Ms. Nesterova's $1,677.63 in exempt funds, *despite* a court order and repeated written requests for the return of the exempt funds, she continues to struggle to make ends meet and is preoccupied with worries about her and her family's financial future.

**FIRST CAUSE OF ACTION**
Violation of the FDCPA, 15 U.S.C. §§ 1692e 1692f
*Against All Defendants*

47.56.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

48.57.    The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt

**Formatted:** Indent: Left: 0", First line: 0.31", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

11

collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

49.58.    Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

50.59.    The obligation alleged to be owed by Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because they were charges made for personal, family, or household purposes.

51.60.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt" as defined by 15 U.S.C. § 1692a(5).

52.61.    For the reasons set forth in the "Parties" section of this Complaint, each Defendant is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

53.62.    Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f.  By way of example and not limitation, Defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a

Last saved: 2/2/2026 1:47 PM

debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; falsely representing or implying that a communication is from an attorney; threatening to take and actually taking an action prohibited by law; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

54.63.    As a direct and proximate result of the Defendants' violations, Plaintiff has suffered damages, including, *inter alia*, significant emotional distress, embarrassment, humiliation, and travel costs.

55.64.    The injuries inflicted on Plaintiff by the Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

56.65.    Plaintiff suffered economic injuries that historically have provided a basis for lawsuits in American courts, including but not limited to out-of-pocket expenses for transit fare and other travel costs.

57.66.    Plaintiff's injuries are analogous to, *inter alia*, the following common law claims: defamation, negligence, invasion of privacy, intrusion upon seclusion, and abuse of process.

58.67.    The Defendants had a duty to exercise reasonable care in the collection of debts, including in the selection of companies to attempt to collect the debt, in ensuring that a debt sued on has not already been settled, and in furnishing agents with accurate information when those agents rely on and use that information in attempting to collect debts.

13

**SECOND CAUSE OF ACTION**
Gross Negligence
*Against all Defendants*

~~59.~~68.    Defendants, as debt collectors, owed Ms. Nesterova a duty of reasonable care in their debt collection efforts.

~~60.~~69.    Defendants' failure to exercise even slight care or diligence amounts to gross negligence.

~~61.~~70.    Defendants failed to exercise reasonable care in reviewing Ms. Nesterova's Exemption Claim Form and supporting evidence of the exempt status of the funds restrained.

~~62.~~71.    As a result of Defendants' actions, Ms. Nesterova was injured.

~~63.~~72.    In addition, Defendants' actions evince a reckless disregard for the rights of others and smack of intentional wrongdoing.

~~64.~~73.    Defendants' conduct was part of a broader pattern of misconduct aimed at the public in general.

**THIRD CAUSE OF ACTION**
Conversion
*Against all Defendants*

~~65.~~74.    Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as though fully set forth herein.

~~66.~~75.    A cause of action for conversion lies when a plaintiff establishes a) her legal ownership of a specific, identifiable piece of property, and b) the defendant's interference with her property interest in defiance of her rights.

~~67.~~76.    Intent to possess another's property is not an essential element of conversion, nor does the converter need to take physical possession of the property. Any wrongful exercise of dominion over a piece of property by someone other than the owner constitutes a conversion.

14

Last saved: 2/2/2026 1:47 PM

68.77.    Property subject to conversion includes readily identifiable funds from a bank account.

69.78.    Here, Defendants froze Ms. Nesterova's bank account containing exempt funds and caused those funds to be turned over to them, despite being repeatedly notified in writing as to the exempt status of the funds. They knowingly and fraudulently exercised dominion over her limited funds, interfering with her right to possession and ability to use her money for her and her family's expenses.

70.79.    Defendants then a) directed a New York City Marshal to seize Ms. Nesterova's money and b) directed the Marshal to place Ms. Nesterova's money in trust for the benefit and use of Defendants, and then to forward said funds to Defendants.

71.80.    Ms. Nesterova gave notice of her legal ownership of the money in her account, and demanded its return and release.

72.81.    Defendants ignored this notice and continued to hold Ms. Nesterova's exempt funds.

73.82.    Ms. Nesterova obtained a court order directing the return of her exempt funds.

74.83.    Defendants ignored this notice and continue to hold Ms. Nesterova's exempt funds. The court-ordered deadline for the return of Ms. Nesterova's exempt funds passed in early June, and Defendants have failed to return the funds.

75.84.    Defendants' improper restraint of Ms. Nesterova's money for an unreasonable period of time without qualification, which harmfully interfered with her right to control her own property, constitutes conversion.

76.85.    For these reasons, Plaintiff is entitled to punitive damages, in addition to actual damages. Actual damages include, *inter alia*, loss of use of money for the period Defendants

Last saved: 2/2/2026 1:47 PM

wrongfully exercised dominion and control over Plaintiff's money and consequential damages resulting therefrom. Plaintiff suffered serious mental distress and disruption of her daily life.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a. A declaration that all Defendants have committed the violations of law alleged in this action;

b. Statutory damages;

c. Reasonable attorney's fees and costs;

d. Actual damages;

e. Compensatory damages;

f. ~~Treble damages;~~

g. Exemplary and punitive damages;

i. Prejudgment and post judgment interest as allowed by law;

j. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Date: F e b r u a r y  2 ,  2 0 2 6
Brooklyn, NY

Respectfully submitted,

By: *Ahmad Keshavarz, Esq.*

LAW OFFICE OF AHMAD KESHAVARZ
~~Emma Catarine, Esq.~~
Ahmad Keshavarz, Esq.
16 Court St., #2600
Brooklyn, NY 11241
Phone: (718) 522-7900
ahmad@NewYorkConsumerAttorney.com

Formatted: Indent: Left: 0", First line: 0.31"

Formatted: Indent: Left: 0", First line: 0"

Last saved: 2/2/2026 1:47 PM