**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ALEKSANDRA NESTEROVA,<br><br>        Plaintiff,<br><br>vs.<br><br>TROMBERG, MORRIS AND PARTNERS, PLLC and CAVALRY SPV I, LLC and CAVALRY PORTFOLIO SERVICES, LLC,<br><br>        Defendants. | Civil Case No.: 1:25-cv-04478-PK<br><br>**ANSWER AND**<br>**AFFIRMATIVE DEFENSES TO**<br>**FIRST AMENDED COMPLAINT**<br>**BY CAVALRY SPV I, LLC AND**<br>**CAVALRY PORTFOLIO SERVICES,**<br>**LLC** |

Defendants and Cavalry SPV I, LLC ("SPV") and Cavalry Portfolio Services, LLC ("CPS) (collectively the "Defendants" or "Cavalry") by their attorneys, Maurice Wutscher, LLP, as and for their answer to Plaintiff's Complaint, alleges as follows:

### PRELIMINARY STATEMENT

Plaintiff Aleksandra Nesterova ("Nesterova" or "Ms. Nesterova") files suit against Defendants Tromberg, Morris & Partners, PLLC ("Tromberg"), Cavalry SPV I, LLC ("Cavalry"), and Cavalry Portfolio Services, LLC, for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. sec. (the "FDCPA") and committing gross negligence and conversion, alleges as follows:

**ANSWER:** The action speaks for itself; no response is required. To the extent that a response to this statement is required, Defendants deny they violated the FDCPA or committed the torts alleged and leave the Plaintiff to her proofs at trial.

### SUMMARY OF CLAIMS

Ms. Nesterova is a single mother and social worker who supports her family with her

1

earnings and food stamps. Every dollar she receives is essential to her household's well-being. Nevertheless, when she was sued on a credit card in 2018, she attempted to negotiate a payment plan as soon as she received notice of the lawsuit, and entered into a settlement agreement in July 2019. She made payments on the settlement agreement initially, but fell behind due to her financial circumstances and the need to provide for her family. After Ms. Nesterova defaulted on the settlement, Defendants were slow to act—seeking a default judgment on the settlement in January 2020, but only entering said judgment two years later, in February 2022. Defendants waited another two years and ten months before finally moving to collect on the judgment in December 2024, levying the entirety of Ms. Nesterova's bank account. 90% of the funds restrained were exempt from levy and garnishment, as the only sources of funds in Ms. Nesterova's account were earnings paid for personal services rendered within 60 days preceding or at any point after the income execution is delivered to the sheriff. 90% of such earnings are exempt from collection pursuant to CPLR 5205(d)(2). Ms. Nesterova timely sent an Exemption Claim Form with evidence of the funds' exempt status to Defendants, which was received on January 13, 2025 and ignored by Defendants.

**ANSWER:** Denied. In so far as this paragraph is pleaded as a "Summary of Claims," it is not an allegation of facts.

Despite the exempt status of Ms. Nesterova's funds, and Ms. Nesterova's repeated notification of Defendants as to the exempt status of the restrained funds, Defendants continued to restrain Ms. Nesterova's bank account containing exempt funds for seven months, refusing to return the full amount of the restrained exempt funds even after a court ordered them to do so in May 2025. Defendants continue to hold Ms. Nesterova's exempt

funds despite this court order.

**ANSWER:** Denied. In so far as this paragraph is pleaded as a "Summary of Claims," it is not an allegation of facts.

## THE PARTIES

1.      Plaintiff Aleksandra Nesterova is an individual who resides in Kings County, New York.

**ANSWER:** Defendant is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

2.      Ms. Nesterova is a consumer as defined by 15 U.S.C. § 1692a(3) because she was alleged to owe a debt to Cavalry SPV I, LLC, arising from a credit card. Plaintiff's alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5) because it was incurred primarily for family, personal, or household purposes. The "debt" includes the amount in the lawsuit and the resulting judgment.

**ANSWER:** The allegations of this paragraph contain conclusions of law to which no response is required, and they are therefore denied.  In addition, Defendants are without sufficient knowledge as to the reasons why Nesterova incurred the obligation such that Defendants can conclude that the obligation is a "debt" as that term is defined by 15 U.S.C. § 1692 a(5).

3.      Defendant Tromberg, Morris & Partners, PLLC, ("Tromberg") is a debt collection law firm organized under the laws of the State of New York which files thousands of collection actions in New York courts. Tromberg engages in business in New York State and this suit arises out of Tromberg's business in New York State. Tromberg's principal place of business is in New York, NY 10006.

3

**ANSWER:** The allegations of this paragraph are not directed to these Defendants, and therefore no response is required. In addition, these Defendants are without sufficient knowledge to either admit or deny the allegations of this paragraph, and therefore they are denied.

4.    Tromberg is a debt collector as defined in 15 U.S.C. § 1692a(6) as they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be due another, and that is their principal purpose. Specifically, Tromberg files thousands of collections lawsuits in civil court and seeks to enforce thousands of putative debts.

**ANSWER:** The allegations of this paragraph are not directed at these Defendants, and therefore no response is required. In addition, the allegations of this paragraph contain conclusions of law to which no response is required and they are therefore denied. Finally, Defendants are without sufficient knowledge to either admit or deny the allegations of this paragraph, and therefore they are denied.

5.    Defendant Cavalry SPV I, LLC is a debt buyer organized under the laws of the State of Connecticut which buys and collects on defaulted consumer debts. Cavalry's principal (indeed sole) purpose is the purchase of putative consumer debts. Cavalry then collects on those purchased debts by using law firms like Tromberg to collect on those judgments by issuing thousands of information subpoenas, bank restraints, and garnishments, and sending thousands of collection letters. Cavalry holds a Debt Collection Agency license from the New York City Department of Consumer and Worker Protection with the license number 1327348-DCA. Cavalry is a debt collector as defined under the FDCPA.

**ANSWER:** Defendants admit only that Cavalry SPV I, LLC  is a limited liability company that purchases receivable accounts and that it holds the license number as alleged. These Defendants

4

deny the remaining allegations of this paragraph.  In addition, the allegations of this paragraph contain conclusions of law to which no response is required, and they are therefore denied.

6. Defendant Cavalry Portfolio Services, LLC, ("CPS") is a servicer which manages and oversees the debt collection activities of the various Cavalry entities, including SPV. CPS acts as servicer for hundreds of thousands of consumer credit accounts SPV and other related Cavalry debt buyers. While SPV is the alleged owner of the putative debt (here the debt sought to be collected against Ms. Nesterova, and the resulting judgment), CPS takes the active steps on behalf of SPV in collection of the putative debt. For example, CPS is the entity that, as the agent of SPV retains and the debt collection law firms, here Tromberg, and who communicates with  the collection law firm. Indeed, the collection firms typically consider CPS the actual client. CPS controls and oversees the actions of the collection firms, who must comply with the CPS policy manuals. *See In re LeGrand*, 638 B.R. 151, 154 (Bkrtcy.E.D.Cal., 2022) (describing relationship between CPS and SPV.)  ("Nationwide servicer Cavalry Portfolio Services, LLC, ("Cavalry "), performs account recovery and record-maintenance services for Cavalry SPV I, LLC (" Cavalry SPV"), which is in the business of purchasing defaulted accounts receivable. Money recovered by the law firm (here the money collected from Ms. Nesterova) is paid to CPS.

**ANSWER:** These Defendants admit only that CPS services accounts for SPV and deny the remaining allegations of this sentence.  Defendants are without sufficient knowledge of what are "active steps on behalf of SPV in collection of the putative debt," and admit only that CPS provides servicing of accounts for SPV and deny all allegations to the contrary.  CPS and SPV admit that the cited decision in *In re LeGrand*, 638 B.R. 151, 154 (Bkrtcy.E.D.Cal., 2022), is a reported decision of a federal bankruptcy court that contains certain findings of fact and law, including that

5

these Defendants violated no law, and that the decision speaks for itself. These Defendants deny all allegations to the contrary. These Defendants are without knowledge of what "money" the allegation refers to and therefore leaves Plaintiff to her proofs.

7.      For these reasons and others SPV is jointly and severally liable for the acts CPS takes on its behalf. For these reasons and others, when this First Amended Complaint, SPV and CPS are referred to jointly as "Cavalry," unless otherwise indicated.

**ANSWER:** These allegations of this paragraph are conclusions of law to which no response is required. If a response is required, the allegation is denied.

8.      The principal (indeed sole) purpose of CPS is to take active steps to collect up hundreds of thoughts of defaulted consumer debts for SPV and other related Cavalry debt purchasers, and it does so regularly. For these reasons and others, CPS is a debt collector as defined by the FDPCA.

**ANSWER:** These allegations of this paragraph are conclusions of law to which no response is required. If a response is required, the allegation is denied.

9.      Tromberg was the freely chosen counsel of the Cavalry. Tromberg was acting in the course and scope of its agency for Cavalry. For these reasons and others Cavalry is jointly and severally liable for the acts of Tromberg taken on behalf of Cavalry.

**ANSWER:** Defendants admit Tromberg was counsel for Cavalry in connection with the state court lawsuit identified in Plaintiff's Complaint. The remaining allegations are denied.


## STATEMENT OF FACTS

10.      On November 23, 2018, Tromberg (then Stephen Einstein and Associates) filed suit against Ms. Nesterova in Kings County Civil Court. Exhibit A (case summary).

**ANSWER:** Cavalry admits this paragraph only to the extent that it is consistent with the record in the Kings County Civil Court and denies all allegations to the contrary.

11.     On March 14, 2019, a default judgment was entered against Ms. Nesterova. Exhibit A.

**ANSWER:** Cavalry admits this paragraph only to the extent that it is consistent with the record in the Kings County Civil Court and denies all allegations to the contrary.

12.     Ms. Nesterova finally became aware of the lawsuit after notice of the default judgment was mailed to her, at which time she began to participate in her own defense pro se. Exhibit A.

**ANSWER:** Defendants are without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

13.     Ms. Nesterova filed an Order to Show Cause on June 27, 2019, and was granted a hearing on July 11, 2019. Exhibit A.

**ANSWER:** Cavalry admits this paragraph only to the extent that it is consistent with the record in the Kings County Civil Court and denies all allegations to the contrary.

14.     Ms. Nesterova attended the July 11 hearing, at which an attorney for Defendants pressured her into a settlement agreement she did not feel she could afford, convincing her she would face a worse outcome if she continued to fight the lawsuit.

**ANSWER:** These Defendants are without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

15.     Feeling that she had no choice, Ms. Nesterova entered into a settlement agreement vacating the default judgment and requiring monthly payments of $75 on July 11, 2019. Exhibit B (July 11, 2019 so-ordered stipulation of settlement).

**ANSWER:** Denied. Cavalry admits Exhibit "B" appears to be a copy of a "so-ordered stipulation of settlement" containing certain terms, but is without sufficient knowledge to either admit or deny whether Exhibit B is what this paragraph claims it to be.

16.    Ms. Nesterova made monthly payments of $75 in August and October of 2019 before finally defaulting on the stipulation of settlement.

**ANSWER:** Cavalry admits its records concerning Nesterova record having received from Defendant Tromberg $75 in August of 2019 and $75 in October 2019. Cavalry is without sufficient knowledge to either admit or deny the remaining allegations of this paragraph and therefore they are denied.

17.    After her default, Ms. Nesterova did not receive the 10-day notice to cure required by the settlement. Ms. Nesterova additionally attempted to contact Defendant Tromberg to negotiate a payment plan she could afford, but was unable to reach anyone at Tromberg. She continued to attempt to contact Defendant Tromberg to work out an arrangement to resume payments even after the pandemic greatly reduced her income as a social worker, but her phone calls and voicemails were never answered or returned.

**ANSWER:** The allegations of this paragraph are not addressed to these Defendants and they are without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

18.    According to Tromberg's own records, Tromberg garnished $71.25 of Ms. Nesterova's pay on October 23, 2019, even though the earlier judgment had been vacated on July 11 and Tromberg had yet to pursue a default judgment on the stipulation of settlement. Exhibit C (Tromberg payment records).

8

**ANSWER:** The allegations of this paragraph are not addressed to these Defendants and they are without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

19.    Defendants finally moved for a default judgment on the stipulation of settlement on January 22, 2020.

**ANSWER:** Cavalry admits this paragraph only to the extent that it is consistent with the record in the Kings County Civil Court. These Defendants deny that they filed anything themselves and that any such filing was made by Defendant Tromberg. These Defendants lack personal knowledge as to when such filings were made.

20.    Defendants succeeded in getting this default judgment entered against Ms. Nesterova on February 14, 2022.

**ANSWER:** Cavalry admits this paragraph only to the extent that it is consistent with the record in the Kings County Civil Court. These Defendants deny that they filed anything themselves and that any such filing was made by Defendant Tromberg. These Defendants lack personal knowledge as to when such filings were made.

21.    Despite obtaining a default judgment in February 2022, Defendants did not move to collect on the judgment for more than two years, waiting until December 2024.

**ANSWER:** Cavalry admits this paragraph only to the extent that it is consistent with the record in the Kings County Civil Court. These Defendants deny they "moved to collect on the judgment" themselves and any such action, if undertaken and which is not admitted, would have been undertaken by Defendant Tromberg.

22.    After finally moving to enforce the default judgment in December 2024, Defendants moved to collect, sending a Levy and Final Demand to the office of New York City

Marshal Ronald Moses on December 10, 2024, and successfully restraining Ms. Nesterova's bank account beginning on December 18, 2024. Exhibit D (Levy and Final Demand), Exhibit E (January 2025 bank statement.)

**ANSWER:** These Defendants deny filing any pleading to enforce any judgment. Any pleadings filed in the Kings County Civil Court were made by Defendant Tromberg. These Defendants deny sending any communication to the office of New York City Marshal Ronald Moses. These Defendants lack knowledge as to such communication and the remaining allegations.

23.     The funds restrained were exclusively earnings for services rendered within 60 days preceding the restraint. As such, 90% of the funds were exempt from restraint under New York law.

**ANSWER:** Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.  In addition, the allegations of this paragraph contain conclusions of law to which no response is required and they are therefore denied.

24.     Ms. Nesterova noticed the restraint when she logged into her mobile banking app on December 17, at which time she immediately called TD Bank to inquire for more information. As Ms. Nesterova was not notified of the default judgment on the stipulation of settlement, she initially suspected fraud.

**ANSWER:** Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

25.     When she called TD Bank, a bank employee informed her that a levy had been placed on her account and instructed her to call the bank's levy department. Ms. Nesterova promptly did so.

**ANSWER:** Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

26.     The bank's levy department informed Ms. Nesterova that they had received papers from the New York City Marshal for a judgment levy from Tromberg on her account, and told her she would have to discuss it with the marshal.

**ANSWER:** Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

27.     The next morning, Ms. Nesterova went to the Kings County Civil Court desperately seeking help and information.

**ANSWER:** Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

28.     Ms. Nesterova was distraught and in tears, afraid to think about how she would provide for her children.

**ANSWER:** Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

29.     At the Kings County Civil Court, Ms. Nesterova was incorrectly told there was no default judgment against her. She persisted in calling TD Bank and Tromberg, but only TD Bank answered.

**ANSWER:** Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

30.     Eventually, after explaining the situation to a TD Bank employee, Ms. Nesterova was able to withdraw some funds that day: the standard statutorily exempt amount of $3,840, but

not the remaining $1,677.63 in exempt funds from earnings for services rendered within the preceding 60 days. Exhibit E.

**ANSWER:** Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

31.     The same day, Ms. Nesterova's next paycheck posted to her account and was immediately restrained; Ms. Nesterova was told there was nothing more she could do but fill out and submit an Exemption Claim Form.

**ANSWER:** Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

32.     Ms. Nesterova sought legal assistance and eventually obtained the assistance of the New Economy Project, who assisted her in filling out the Exemption Claim Form and making detailed calculations as to the application of the exemption to each paycheck.

**ANSWER:** Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

33.     Ms. Nesterova submitted this Exemption Claim Form to Tromberg and TD Bank on January 10, 2025, accompanied by an explanation and a detailed calculation of the status of the exemption with regards to each paycheck which contributed to the funds restrained. Exhibit F (January 10, 2025 Exemption Claim Form), Exhibit G (Exemption Claim Letter).

**ANSWER:** Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

34.     Ms. Nesterova received confirmation of Tromberg's receipt of her exemption claim form on January 13, 2025.

**ANSWER:** Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

35.    Ms. Nesterova filed an Order to Show Cause with the assistance of CLARO on January 16, 2025. This Order to Show Cause was rejected by a judge for paperwork deficiencies. Exhibit H (January 16, 2025 Order to Show Cause).

**ANSWER:** Cavalry admits this paragraph only to the extent that it is consistent with the record in the Kings County Civil Court and all allegations to the contrary are denied.

36.    Ms. Nesterova filed a second Order to Show Cause, correcting the error of the first one, the next day, January 17, 2025. Exhibit I (January 17, 2025 Order to Show Cause).

**ANSWER:** Cavalry admits this paragraph only to the extent that it is consistent with the record in the Kings County Civil Court and all allegations to the contrary are denied.

37.    Ms. Nesterova continued attempting to notify Defendants of the exempt status of the restrained funds, contacting Tromberg through their website on January 28, 2025 in an attempt to communicate the situation and the exempt status of the restrained funds to someone at Tromberg.

**ANSWER:** Denied as to Cavalry.  Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

38.    Tromberg transferred the restrained funds to Cavalry no later than Feburary 5, 2025, crediting $3,166.77 to Ms. Nesterova's judgment balance on that date, according to Tromberg's own records. Exhibit C.

**ANSWER:** The allegations of this paragraph are not addressed to these Defendants and they are without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

39.     Despite Ms. Nesterova's efforts to inform Defendants that the restrained funds were exempt and should be returned, Defendants persisted in pursuing the restraint and levy.

**ANSWER:** Denied as to these Defendants.

40.     Defendants ignored Ms. Nesterova's Exemption Claim Form after their receipt thereof on January 13, 2025. Defendants ignored Ms. Nesterova's two January Orders to Show Cause. And Defendants ignored Ms. Nesterova's posting on Tromberg's website on January 28, 2025.

**ANSWER:** Denied as to these Defendants.

41.     However, Defendants had not forgotten about Ms. Nesterova; they took more than $3,000 from her bank account in December and credited the amounts obtained to her judgment balance in February, ignoring her repeated attempts to demonstrate that those funds were mostly exempt. Exhibit C.

**ANSWER:** Denied as to these Defendants.

42.     Ms. Nesterova filed a third Order to Show Cause for Defendants' failure to answer her previous Orders to Show Cause on March 19, 2025. Exhibit J (Affirmation and exhibits in support of March 19, 2025 OSC.)

**ANSWER:** Cavalry admits this paragraph only to the extent that it is consistent with the record in the Kings County Civil Court and all allegations to the contrary are denied.

43.     Defendants finally proceeded to file their opposition to Ms. Nesterova's Order to Show Cause on March 28, 2025. At no point in the four-page document or its supporting exhibits did Defendants respond to Ms. Nesterova's claim that the funds were exempt. Exhibit K (Tromberg opposition).

**ANSWER:** These Defendants deny having filed any pleading. Any pleadings filed in the Kings County Civil Court were made and filed by Defendant Tromberg and these Defendants lack personal knowledge as to when such filings were made or the content of such pleadings.

44.    Ms. Nesterova persisted. After a court date on her Order to Show Cause was adjourned from April 2 to May 8, Ms. Nesterova wrote a letter directly to the New York City Marshal on May 5, substantially repeating what she had already told Defendants through the Exemption Claim Form and her other communications with Tromberg. She sent a similar letter to Tromberg on the same date. Exhibit L (May 5, 2025 letters).

**ANSWER:** Denied as to Cavalry.

45.    At a second court date on May 8, a legal services attorney represented Ms. Nesterova for the purposes of negotiation only. Attempts to negotiate a settlement or the return of Ms. Nesterova's exempt funds were unsuccessful. Exhibit M (May 8, 2025 notice of appearance).

**ANSWER:** Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

46.    On May 15, 2025, a Kings County Civil Court Judge issued an order denying Ms. Nesterova's motion to vacate the judgment but granting her request for an order for the return of the exempt funds within 20 days. Exhibit N (May 15, 2025 court order).

**ANSWER:** Cavalry admits this paragraph only to the extent that it is consistent with the record in the Kings County Civil Court. Cavalry denies that it had knowledge of the May 15, 2025, Order prior to the filing of Plaintiff's Complaint.

47.    The 20-day deadline for the return of Ms. Nesterova's funds came and went in early June. To this day, Defendants have not returned Ms. Nesterova's $1,677.63 in exempt funds, despite the court order.

**ANSWER:** Denied.

48.    Upon seeing her money taken, Ms. Nesterova was shocked, upset, and afraid.

**ANSWER:** Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

49.    Ms. Nesterova is the sole provider for herself and her children. The prospect of a large money judgment against her caused a significant deal of stress.

**ANSWER:** These Defendants are without sufficient knowledge to either admit or deny the allegations of this paragraph, and therefore they are denied.

50.    Ms. Nesterova suffers from Graves' disease, also known as hyperthyroidism, which is exacerbated by stress.

**ANSWER:** These Defendants are without sufficient knowledge to either admit or deny the allegations of this paragraph, and therefore they are denied.

51.    When Ms. Nesterova found out about the restraint on December 17, a week before Christmas, she collapsed onto the floor and broke down crying in front of her young children. She told them she did not know what they were going to do for Christmas because she no longer had any money. She contacted numerous friends and relatives in a panic and immediately worried about what she would do with her children over their winter break from school.

**ANSWER:** These Defendants are without sufficient knowledge to either admit or deny the allegations of this paragraph, and therefore they are denied.

52.    Ms. Nesterova took off from work and frantically traveled across Brooklyn on December 18, from her home in southern Brooklyn to Kings County Civil Court in downtown Brooklyn to her local TD Bank branch, in search of information and assistance. Ms. Nesterova was highly and visibly distressed throughout this ordeal.

**ANSWER:** These Defendants are without sufficient knowledge to either admit or deny the allegations of this paragraph, and therefore they are denied.

53.    Defendants have held Ms. Nesterova's exempt funds for over seven months, depriving her of money needed to meet the basic needs of herself and her two children.

**ANSWER:** Denied as to Cavalry. Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

54.    Defendants' refusal to return the exempt funds has forced Ms. Nesterova to incur additional travel and postage expenses, attend multiple court appearances, and devote significant additional time to attempting to secure the return of her exempt funds.

**ANSWER:** Denied as to Cavalry. Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

55.    As Defendants *continue* to fail to return Ms. Nesterova's $1,677.63 in exempt funds, *despite* a court order and repeated written requests for the return of the exempt funds, she continues to struggle to make ends meet and is preoccupied with worries about her and her family's financial future.

**ANSWER:** Denied as to Cavalry. Cavalry is without sufficient knowledge to either admit or deny the allegations of this paragraph and therefore they are denied.

### FIRST CAUSE OF ACTION
Violation of the FDCPA, 15 U.S.C. §§ 1692e 1692f
*Against All Defendants*

56.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

**ANSWER:** Cavalry restates and incorporates by reference its answers and responses in the preceding paragraphs as though set forth herein.

57.    The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

**ANSWER:** The allegations of this paragraph contain conclusions of law to which no response is required and therefore they are denied.

58.    Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

**ANSWER:** The allegations of this paragraph contain conclusions of law to which no response is required and therefore they are denied.

59.    The obligation alleged to be owed by Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because they were charges made for personal, family, or household purposes.

**ANSWER:** The allegations of this paragraph contain conclusions of law to which no response is required and therefore they are denied.

60.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt" as defined by 15 U.S.C. § 1692a(5).

**ANSWER:** The allegations of this paragraph contain conclusions of law to which no response is required and therefore they are denied.

61.     For the reasons set forth in the "Parties" section of this Complaint, each Defendant is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

**ANSWER:** The allegations of this paragraph contain conclusions of law to which no response is required and therefore they are denied.

62.     Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f. By way of example and not limitation, Defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; falsely representing or implying that a communication is from an attorney; threatening to take and actually taking an action prohibited by law; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

**ANSWER:** Denied.  In addition, the allegations of this paragraph contain conclusions of law to which no response is required and therefore they are denied.

63.     As a direct and proximate result of the Defendants' violations, Plaintiff has suffered damages, including, *inter alia*, significant emotional distress, embarrassment, humiliation, and travel costs.

**ANSWER:** Denied.  In addition, the allegations of this paragraph contain conclusions of law to which no response is required and therefore they are denied.

64.     The injuries inflicted on Plaintiff by the Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

**ANSWER:** Denied.  In addition, the allegations of this paragraph contain conclusions of law to which no response is required and therefore they are denied.

65.     Plaintiff suffered economic injuries that historically have provided a basis for lawsuits in American courts, including but not limited to out-of-pocket expenses for transit fare and other travel costs.

**ANSWER:** Denied.  In addition, the allegations of this paragraph contain conclusions of law to which no response is required and therefore they are denied.

66.     Plaintiff's injuries are analogous to, *inter alia*, the following common law claims defamation, negligence, invasion of privacy, intrusion upon seclusion, and abuse of process.

**ANSWER:** Denied.  In addition, the allegations of this paragraph contain conclusions of law to which no response is required and therefore they are denied.

67.     The Defendants had a duty to exercise reasonable care in the collection of debts, including in the selection of companies to attempt to collect the debt, in ensuring that a debt sued on has not already been settled, and in furnishing agents with accurate information when those agents rely on and use that information in attempting to collect debts

**ANSWER:** The allegations of this paragraph contain conclusions of law to which no response is required, and therefore, they are denied. Any duty of reasonable care owed by these Defendants to Plaintiff has been satisfied or is not a material breach of such duty.

## SECOND CAUSE OF ACTION
Gross Negligence
*Against all Defendants*

68.    Defendants, as debt collectors, owed Ms. Nesterova a duty of reasonable care in their debt collection efforts.

**ANSWER:** Denied.

69.    Defendants' failure to exercise even slight care or diligence amounts to gross negligence.

**ANSWER:** Denied.

70.    Defendants failed to exercise reasonable care in reviewing Ms. Nesterova's Exemption Claim Form and supporting evidence of the exempt status of the funds restrained.

**ANSWER:** Denied.

71.    As a result of Defendants' actions, Ms. Nesterova was injured.

**ANSWER:** Denied.

72.    In addition, Defendants' actions evince a reckless disregard for the rights of others and smack of intentional wrongdoing.

**ANSWER:** Denied.

73.    Defendants' conduct was part of a broader pattern of misconduct aimed at the public in general.

**ANSWER:** Denied.

## THIRD CAUSE OF ACTION
Conversion

*Against all Defendants*

74.     Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as though fully set forth herein.

**ANSWER:** Cavalry restates and incorporates by reference its answers and responses in the preceding paragraphs as though set forth herein.

75.     A cause of action for conversion lies when a plaintiff establishes a) her legal ownership of a specific, identifiable piece of property, and b) the defendant's interference with her property interest in defiance of her rights.

**ANSWER:** The allegations of this paragraph contain conclusions of law to which no response is required.

76.     Intent to possess another's property is not an essential element of conversion, nor does the converter need to take physical possession of the property. Any wrongful exercise of dominion over a piece of property by someone other than the owner constitutes a conversion.

**ANSWER:** The allegations of this paragraph contain conclusions of law to which no response is required. If a response is deemed to be required, they are denied.

77.     Property subject to conversion includes readily identifiable funds from a bank account.

**ANSWER:**  The allegations of this paragraph contain conclusions of law to which no response is required.  If a response is deemed to be required, they are denied.

78.     Here, Defendants froze Ms. Nesterova's bank account containing exempt funds and caused those funds to be turned over to them, despite being repeatedly notified in writing as to the exempt status of the funds. They knowingly and fraudulently exercised dominion over her limited

funds, interfering with her right to possession and ability to use her money for her and her family's expenses.

**ANSWER:** Denied.

79.    Defendants then a) directed a New York City Marshal to seize Ms. Nesterova's money and b) directed the Marshal to place Ms. Nesterova's money in trust for the benefit and use of Defendants, and then to forward said funds to Defendants.

**ANSWER:** Denied.

80.    Ms. Nesterova gave notice of her legal ownership of the money in her account, and demanded its return and release.

**ANSWER:** Denied.  In addition, the allegations of this paragraph contain conclusions of law to which no response is required and therefore they are denied.

81.    Defendants ignored this notice and continued to hold Ms. Nesterova's exempt funds.

**ANSWER:** Denied.

82.    Ms. Nesterova obtained a court order directing the return of her exempt funds.

**ANSWER:** Cavalry admits this paragraph only to the extent that it is consistent with the record in the Kings County Civil Court.  Cavalry denies that it had knowledge of the May 15, 2025, Order prior to the filing of Plaintiff's Complaint.

83.    Defendants ignored this notice and continue to hold Ms. Nesterova's exempt funds. The court-ordered deadline for the return of Ms. Nesterova's exempt funds passed in early June, and Defendants have failed to return the funds.

**ANSWER:** Denied.

84.     Defendants' improper restraint of Ms. Nesterova's money for an unreasonable period of time without qualification, which harmfully interfered with her right to control her own property, constitutes conversion.

**ANSWER:** Denied.

85.     For these reasons, Plaintiff is entitled to punitive damages, in addition to actual damages. Actual damages include, *inter alia*, loss of use of money for the period Defendants wrongfully exercised dominion and control over Plaintiff's money and consequential damages resulting therefrom. Plaintiff suffered serious mental distress and disruption of her daily life.

**ANSWER:** Denied.  In addition, the allegations of this paragraph contain conclusions of law to which no response is required and therefore they are denied.

**WHEREFORE**, Defendants Cavalry SPV I, LLC and Cavalry Portfolio Services, LLC, respectfully request that this Honorable Court award judgment in favor of Cavalry SPV I, LLC and Cavalry Portfolio Services, LLC, and against Plaintiff, together with costs, attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3) and grant any such other relief the Court deems just and appropriate.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff has failed to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiff's claims are, or may be, barred by the applicable statute(s) of limitations.

### Third Affirmative Defense

Any actual damage to Plaintiff, which Cavalry denies, is due to the acts or omissions of Plaintiff and/or others, and Cavalry is not liable for said acts, omissions, or alleged damages.

**Fourth Affirmative Defense**

Plaintiff's claims are, or may be, barred or diminished by the doctrines of assumption of the risk, failure to mitigate, res judicata, collateral estoppel, and waiver.

**Fifth Affirmative Defense**

Any duty of reasonable care owed by these Defendants to Plaintiff has been satisfied or is not a material breach of such duty

**Sixth Affirmative Defense**

If discovery reveals that any alleged debt identified in Plaintiff's Complaint is subject to an agreement requiring the parties to submit any dispute between them to arbitration, then there is no subject matter jurisdiction over Plaintiff's Complaint or, in the alternative, Cavalry reserves the right to compel Plaintiff to submit this dispute to arbitration pursuant to any such agreement and/or equitable estoppel principles.

Cavalry reserves the right to amend its answer and affirmative defenses herein by adding additional parties, affirmative defenses, counterclaims, crossclaims, and/or third-party claims, as additional investigation, discovery or circumstances warrant.

Respectfully Submitted
MAURICE WUTSCHER, LLP
BY:    */s/ Donald S. Maurice*
Donald S. Maurice
Thomas R. Dominczyk
MAURICE WUTSCHER LLP
5 Walter E. Foran Blvd, Suite 2007
Flemington, NJ 08822
(908) 237-4550
*Counsel for Defendant Cavalry SPV I, LLC*

Dated: February 16, 2026

CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2026, I caused a true and correct copy of the foregoing document to be served upon all parties of record via ECF.


*/s/ Donald S. Maurice*
Donald S. Maurice

Dated: February 16, 2026